**MANAGEMENT RECRUITERS INTERNATIONAL, INC.,**
Plaintiff,

v.

**Robert J. ROGERS, Defendant.**

**No. 86–441C(B).**

United States District Court,
E.D. Missouri, E.D.

July 30, 1986.

William Euwer, Clayton, Mo., for plaintiff.

Thomas Connelly, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

REGAN, District Judge.

In this diversity action tried to the Court, we sustained defendant's motion for judgment at the conclusion of plaintiff's case. Herein, we set forth the facts and conclusions supportive of our ruling that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law.

Plaintiff is engaged in the personnel placement service business throughout the country. One of its numerous offices was located in Clayton, Missouri. On May 5, 1980, plaintiff employed defendant in the capacity of an account executive at plaintiff's Clayton office (the "Office"). His employment was involuntarily terminated on November 11, 1982.

Basically, the duties of an account executive were to locate candidates for specific jobs and induce employers to hire those candidates. The terms of defendant's employment were set forth in two written documents constituting the employment contract agreement. The contract is on a mimeographed form drafted by plaintiff at its corporate headquarters in Cleveland, on the blank spaces of which the date of employment, the name of defendant, and the Clayton address of plaintiff were typed. Inter alia, the contract provided in Paragraph 5(b)(ii) that for a period of one year following the effective date of termination of the contract, the account executive "(A) shall not engage in the activities of an account executive in the personnel placement service business within a geographical area consisting of a one hundred (100) mile radius of the "OFFICE" and (B) shall not contact, in the course of the personnel placement service business, any ... employer-client with whom the Account Executive had contact with or access to during the twelve (12) months immediately preceding the effective date of termination of this Agreement."

Plaintiff's claim is premised on defendant's alleged breach of the foregoing two "Restrictive Covenants", for which "liquidated damages" of $29,791.20 together with an attorney's fee are prayed. The evidence adduced in support of plaintiff's claim was by way of the deposition (on written interrogatories) of Lloyd Hawkey, the corporate manager of employee relations of Mueller Company, located in Decatur, Illinois. During the time defendant was an account executive (and within twelve months prior to his termination) defendant had placed personnel with Mueller Company. After testifying that thereafter, through J.F. Enterprises, defendant provided Mueller Company with two employees, the first a Fred Kidd hired on June 18, 1984, and the other, a Paul Kleeman hired on December 13, 1984, both dates more than a year after November 11, 1982, the date defendant was terminated, Mr. Hawkey added that on August 15, 1983 a Rod Vera, in Birmingham, Alabama, was also placed with Mueller through J.F. Enterpris-

es, for which a fee of $11,550 was paid to it by Mueller.

Plaintiff's theory as to the alleged breach of Paragraph 15(b)(ii)(A) is that the mere fact that the former employee has an office within the hundred mile radius at any time within the period of one year after termination constitutes a violation thereof, irrespective of whether the activities took place either within or without that geographical area. On that premise, plaintiff contends that defendant violated Clause (A) simply because the office of J.T. Enterprises (assuming defendant's ownership thereof) was located within the hundred mile radius, and that it was immaterial that the activities of defendant may have been engaged in more than a hundred miles of Clayton.

As for Paragraph 5(b)(ii)(B), plaintiff's theory is that the mere fact that an employee was placed with Mueller through J.T. Enterprises constitutes a "contact" with Mueller as that term is used in the contract even in the absence of any evidence that the placement was initiated by Rogers.

We do not rule the validity vel non of plaintiff's construction of the "restrictive covenants" nor whether the so-called "liquidated damages" are in fact a penalty (as would appear not only from their expressed purpose but also from plaintiff's evidence). For purposes of the motion for judgment, we have assumed that the evidence created an issue of fact as to whether defendant breached the contract in the respects alleged. However, as appears infra, plaintiff's evidence demonstrates that it first breached the contract, and under Missouri law (which the parties agree govern this case) it is well settled that a party cannot claim the benefits of a contract where it is the first to violate it.

The employment contract provides that as compensation for his services the account executive shall be paid, in part, by commissions based on a stipulated percentage of placement fees received and retained by defendant which result from the placement of individuals with employer-clients of defendant "though the Account Executive's sole efforts", less certain deductions. It is undisputed that prior to his termination defendant had solely and personally completed all matters necessary for the placement of two candidates (James T. Rahm and David Lampert) for employment, and that all that remained to be done to entitle defendant to a fee was for Rahm and Lambert to be offered employment by the prospective employers and to accept that offer. As noted supra, defendant was terminated on November 11, 1982. Theretofore, he had scheduled a final placement interview for Rahm with Allis Chalmers for November 12, 1982 and a final placement interview for Lambert with Hyatt Clark Industries for November 13, 1982. At the Rahm interview, he was offered employment and accepted the offer on November 16, 1982. At the Lambert interview, he was offered and then accepted employment.

Admittedly, no one other than Rogers participated in any way in these placements. They resulted from the sole efforts of defendant. Nevertheless, although plaintiff billed Allis Chalmers and Hyatt Clark Industries for the placement fees which it received and retained, it has refused to pay the commission to defendant on the ground that it was the inflexible "policy" of plaintiff (but not expressed in the contract) to pay commissions only for placements which were finalized prior to termination without regard to the fact that such placement had resulted from the sole efforts of the terminated account executive.

The commissions, calculated according to the contract formula, aggregated $7,296. The amount of these commissions was paid by plaintiff to the manager of its Clayton office, the very person who terminated defendant and who admittedly was not involved in any way in the placements other than to verify thereafter the fact they had been made (in order to bill them for plaintiff's fees). Although plaintiff insists it was unaware that the placements were imminent, and in fact the manager testified that he would not have terminated plaintiff

had he been so aware, nevertheless the manager personally pocketed the amount of the commissions which he knew defendant had earned. Under plaintiff's evidence, it is indebted to defendant in the sum of $7,296.

It is also beyond dispute that plaintiff had breached its obligation to defendant long before defendant may have breached the contract. Although the commissions were not technically payable until January, 1983, plaintiff had, within days after the termination expressly denied any liability whatever to defendant for the commissions he had earned, and, of course still refuses to pay him. We add that the only evidence adduced by plaintiff with respect to defendant's alleged breach of the contract, *within the one year period after termination* related to the placement of Rod Vera with Mueller Company in August, 1983, long after the January date for payment to defendant. And there is no evidence whatever as to *when*, within the year (prior to August) defendant may have opened or utilized his alleged office within 100 miles of Clayton. Hence, under any view of the facts, plaintiff's breach of the agreement antedated any possible breach by defendant. It follows that plaintiff is not entitled to recover and that judgment should be entered in favor of defendant on his counterclaim for $7,296.